**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BROOKE BASHAW,                    )
                                  )
and                               )
                                  )
KATIE SELLERS,                    )
                                  )
and                               )
                                  )   Case No.: 11-CV-2693 JWL/JPO
LAUREN SPALSBURY,                 )
                                  )
    *Plaintiffs/Counterclaim Defendants,*  )
                                  )
*vs.*                             )
                                  )
JEREMIAH JOHNSON,                 )
                                  )
    *Defendant/Counterclaim Plaintiff.*   )

**PLAINTIFFS LAUREN SPALSBURY AND KATIE SELLERS'
SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM PURSUANT TO FRCP 12(b)(6)**

Plaintiffs, Lauren Spalsbury and Katie Sellers ("Plaintiffs") by and through the undersigned counsel, state as follows in support of their Motion to Dismiss Defendant's Counterclaims.

**INTRODUCTION**

**Count I of Defendant's Counterclaim fails to State the
Essential Elements of a Claim under the CFAA and Wholly Fails to
Provide Any Factual Basis for the Claim**

Defendant has filed a Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") claim against Plaintiffs for alleged violations of the Computer Fraud Act.  In essence, Defendant alleges that one or more Plaintiff took control of "an Apple iPhone, Apple iPad, and one or more computers that were used by Defendant". (Defendant's Counterclaim, ¶4) Defendant alleges that one or more Plaintiff "without authority, used,

copied, modified and irreversibly changed all or portions of the materials and data on said iPhone..." (¶5) Defendant alleges that he was damaged and that damages would exceed at least $5,000.00 in value. (¶15)

Defendant does not allege what information was allegedly used, copied, modified, or irreversibly changed. Additionally, Defendant fails to mention that the iPad at issue disappeared or was "lost" by Defendant immediately following the discovery of the images of the Plaintiffs on the iPad. Furthermore, Defendant does not allege which Plaintiff engaged in the conduct at issue, and what role, if any, each Plaintiff played in this alleged counterclaim. Most importantly however, Defendant fails to allege the way in which he was damaged. In fact he alleges that the damages <u>would</u> exceed, not that they did in fact exceed, the threshold limit of $5,000.00 (¶15)

Based on the above, it is clear that Defendant's counterclaim is fatally flawed and must be dismissed.  The counterclaim relies on bare assertions and legal conclusions specifically rejected by the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The counterclaim fails to meet the statutory definitions of "loss" requiring loss "because of interruption of service" and "damage" requiring impairment, and fails to demonstrate that Plaintiffs alleged conduct was "without authorization or exceeds authorized access."

I.    **Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the rule does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  A complaint

2

that rests on labels, conclusions, and "formulaic recitation[s] of the elements of a cause of action" fails this pleading standard. *Twombly,* 550 U.S. at 555.

The Supreme Court has suggested a two-step approach to evaluating a complaint. First, the court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* at1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, while the remaining "well-pleaded factual allegations" are assumed to be true, the reviewing court must still "determine whether they plausibly give rise to an entitlement to relief." *Id.* If the well-pleaded facts support a more persuasive, and likely benign, "obvious alternative explanation" for the defendant's actions, a claim is not plausible. *Twombly*, 550 U.S. at 567. If, in fact, the court may only infer the "mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at1950 (internal quotations omitted). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotations omitted).

## II.     The Computer Fraud and Abuse Act

Defendant alleges that one or more Plaintiff violated § 1030(a)(2)(C). *See* ¶12 & ¶17. Section § 1030(a)(2)(C) provides criminal liability for whoever "intentionally accesses a computer ***without authorization or exceeds authorized access***, and thereby...obtains information from any protected computer" 18 U.S.C. § 1030(a)(2)(A),(B), and (C) (emphasis supplied).

Alternatively, it appears that Defendant contends that Plaintiffs violated 18 U.S.C. §1030. *See* ¶10. To make out a claim under 18 U.S.C. § 1030(a)(4), Plaintiff must

3

show that Defendants (1) knowingly and with intent to defraud (2) accessed a protected computer (3) without authorization or exceeding authorized access (4) obtained anything of value, (5) causing a loss resulting in economic damages aggregating at least $5,000.00. 18 U.S.C. §§1030(a)(4), 1030(a)(5)(B)(i), 1030(g).

Though the CFAA is a criminal statute, it permits a civil action by, "Any person who suffers *damage or loss* by reason of a violation of this section... if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g) (emphasis supplied).

Based upon the allegations in the Counterclaim, Defendant's only conceivable basis for a claim against Plaintiffs is subclause (I) of subsection (c)(4)(A)(i) which provides,

> **(I)** *loss* to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other   protected   computers) aggregating   at   least $5,000.00 in value.

18 U.S.C. § 1030(c)(4)(A)(i)(I) (emphasis supplied).

## A.   Defendant has neither adequately plead, nor can he plausibly claim "Damage" Under the CFAA

The term "damage" is defined by the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).  Thus, Defendant must allege facts supporting a plausible claim that Plaintiffs alleged conduct resulted in an impairment to the integrity or availability of data, a program, a system, or information.   Defendant simply has not and cannot state any facts that any such "damage" occurred.  Instead, Plaintiffs make the following conclusory allegation:

4

- That as a direct and proximate result of the actions of Plaintiffs while acting individually and/or in concert, the Defendant has been damaged and that the damages would exceed at least $5,000.00 in value and would be a threat or invasion of the public interest and confidential information therein. [1]

This is simply "an unadorned, the-defendant-unlawfully-harmed-me accusation" entitled to no assumption of truth. *Iqbal,* at 1949 – 1950.  Defendant, at no time in the complaint, states what information was allegedly used, copied, modified and irreversibly changed. (¶5) Defendant never states how it allegedly occurred or on what device/computer this allegedly occurred, or even who allegedly engaged in the conduct. (¶4 – 6).

Simply stated, Defendant makes no allegation supported by facts that any data, programs, systems, or information in his "iPhone, iPad, and computers in question" was in any way impaired by one or more of the Plaintiffs alleged conduct.   Instead, Defendant alleges that Plaintiff(s) "without authority, used, copied, modified, and irreversibly changed all or portions of the materials and data on said iPhone or iPad, and computers". (¶5) It is clear that Defendant's counterclaim is without merit and should be dismissed when it does not state what was allegedly done, on what type of device the alleged conduct occurred, or who allegedly engaged in the conduct. It is clear that more specific facts are not included because Defendant does not have such information to support his claim.

---

[1] Plaintiffs fully expect Defendant to cite *H&R Block Eastern Enterprises, Inc.. v. J&M Securities, LLC,* 2006 WL 1128744 at *4 (W.D.Mo) for the proposition that a conclusory allegation that "[a]s a result of defendants' unauthorized, intentional access of H & R Block's protected computer system, H & R Block has suffered damages and a loss of no less than $5,000.00, including but not limited to its costs to respond to this offense" as sufficient to withstand a motion to dismiss.  Importantly however, Judge Whipple evaluated the pleadings in that case under pre *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) standard, and the complaint in the case identified the information as "its confidential customer information."

Perhaps most important, however, Defendant cannot meet the damage element of his claim. Defendant has not alleged how he was purportedly damaged and in fact does not allege any monetary damage. He merely states that the damage <u>would</u> exceed $5,000.00, not that he has in fact incurred such damage. Defendant has not stated one fact upon which he bases his claim of damage.

Once again, this is simply "an unadorned, the-defendant-unlawfully-harmed-me accusation" entitled to "no assumption of truth" and fails to meet pleading requirements. *Iqbal,* at 1949 – 1950. Defendant does not allege any specific conduct on the part of Plaintiffs that would lead to any such alleged damage. It is important to note that even such an infraction such as downloading and e-mailing unidentified documents, even if confidential, is insufficient to show "damage" under the CFAA.[2] Cases have been numerous in simply interpreting the statute defining "damage" as plainly written and requiring some form of impairment.

In *Garelli Wong & Assocs. v. Nichols,* Garelli Wong claimed that Nichols-an ex-employee who went to work for a competitor-"compiled significant amounts of Garelli Wong's confidential and proprietary client and candidate information ... and attempted to send this information to his personal e-mail account and/or copied it for his personal use," 551 F.Supp.2d 704, 707 (N.D.Ill.2008). Nichols argued there was no damage because his "unauthorized acts of copying and e-mailing Garelli Wong's computer files did not impair the integrity or availability of the information in the Database and did not cause any interruption of service." *Id.* at 709. The court agreed:

---

[2] Plaintiffs note in *H&R Block Eastern Enterprises, Inc..,* 2006 WL 1128744 at *4, Judge Whipple, without analysis, denied a motion to dismiss which alleged "unlawful and unauthorized access and use of its confidential customer information." Defendant here, unlike the plaintiff in that case however, does not even identify the document(s) at issue, as is plainly required by *Iqbal,* at 1949-1950.

> Though Garelli Wong would like us to believe that recent amendments to the CFAA are intended to expand the use of the CFAA to cases where a trade secret  has been misappropriated through the use of a computer, we do not believe that  such conduct alone can show "impairment to the integrity or availability of data, a program, a system or information.
> *Id.* at 710.

In *Motorola, Inc. v. Lemko Corp.,* Motorola alleged a group of its employees secretly accepted employment with one of its competitors and-while still working for Motorola-downloaded and e-mailed Motorola's confidential business information to third parties. 609 F.Supp.2d 760, 763 (N.D.Ill.2009).  Despite these transgressions, the court found Motorola was not damaged:

> The only harm Motorola has alleged is the disclosure to a competitor of its trade  secrets and other confidential information. The CFAA's definition of damage does not cover such harm; rather, ***damage under the statute is limited to impairment of the integrity or availability of data and information.   The plain language of the statutory definition refers to situations in which data is lost or impaired because it was erased or because for example a defendant smashed a hard drive with a hammer.***

*Id.* at 769 (emphasis supplied);  <u>see also</u> *Continental Group, Inc. v. KW Property Management, LLC,* 622 F.Supp.2d 1357, 1371) (S.D.Fla.2009) ("This Court again agrees with the Defendants, based upon the plain language of the statute that the data must be impaired and not merely copied.");  *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc.,* 616 F.Supp.2d 805, 811 (N.D.Ill.2009) (finding no "damage" under the CFAA because ".. copying electronic files from a computer database-even when the ex-employee e-mails those files to a competitor-is not enough to satisfy the damage requirement of the CFAA; there must be destruction or impairment to the integrity of the underlying data."); *Andritz, Inc. v. Southern Maintenance Contractor, LLC,* 2009 WL 48187 at *3 (M.D.Ga.2009) (finding no "damage" under CFAA when "Plaintiff alleges that Defendants stole Plaintiff's trade secrets and proprietary information and

7

gave them to Plaintiff's competitor so that the competitor could poach Plaintiff's customers and potential customers using Plaintiff's own information."); *Kluber Skahan & Assocs. V. Cordogon*, No. 08-1529, 2009 U.S. Dist. LEXIS 14527, at *20, 2009 WL 466812, *8 ("The underlying concern of the Act [is] damage to data" and that "the statute was not meant to cover the disloyal employee who walks off with confidential information."); *Am. Family Mut. Ins. Co. v. Rickman*, 554 F.Supp.2d 766, 771 (N.D.Ohio 2008) (dismissing CFAA claim against employee who misappropriated employer's confidential information); *Condux International v. Haugum,* 2008 WL 5244818, *8 (D.Minn., Dec. 15, 2008) (the plain language of the statute requires "some alteration of or diminution to the integrity, stability, or accessibility of the computer data itself" to be "damage" under the CFAA); *Brett Senior & Assocs., P.C. v. Fitzgerald,* 2007 WL 2043377, at *3 (E.D.Pa. July 13, 2007); (the language of the CFAA targets "the unauthorized procurement or alteration of information, not its misuse or misappropriation.") *Worldspan, L.P. v. Orbitz, LLC,* No. 05 C 5386, 2006 WL 1069128, at *5 (N.D.Ill. Apr. 19, 2006) (rejecting the argument that "the mere 'taking of information' constitutes 'damage' under the CFAA"); *Lockheed Martin Corp. v. Speed,* No. 6:05-CV-1580-ORL-31, 2006 WL 2683058, at *3, 8 (M.D.Fla. Aug. 1, 2006) (concluding that "[t]he copying of information from a computer onto a CD or PDA is a relatively common function that typically does not, by itself, cause permanent deletion of the original computer files," and thus, does not, by itself, constitute "damage" under the CFAA). Defendant has wholly failed to allege conduct by Plaintiffs or remedial measures or costs incurred by Defendant that would constitute damages. It is for these reasons that Plaintiffs request that Count I of Defendant's Counterclaim be dismissed.

**B.   Defendant has neither adequately plead, nor can he plausibly claim "Loss".. "because of Interruption of Service" as Required Under the CFAA**

To establish a CFAA claim, Defendant must allege that Plaintiffs intentionally accessed a protected computer without authorization and, as a result, caused an annual loss of at least $5,000.00. 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(c)(4)(A)(i)(I).  The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to the offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred ***because of interruption of service***." 18 U.S.C. § 1030(e)(11) (emphasis added).

Accordingly, a complaint that is devoid of allegations that ***the access caused an interruption in service*** fails to adequately plead "loss" under the CFAA.  In *Lasco Foods, Inc. v. Hall and Shaw Sales, Marketing & Consulting, LLC*, 600 F.Supp.2d 1045 (E.D.Mo.2009), Judge Hamilton agreed that a Plaintiff alleging violations under the CFAA must allege an interruption in service in order to state claim. *Lasco Foods, Inc.,* 600 F.Supp.2d at 1052.  Noting that the Plaintiff in that case had alleged that the Defendants in that matter had refused to return their computers for a period of time, the Court concluded that there had been an allegation of interruption of service as required by the statute.  *Id.*

In reaching her conclusion, Judge Hamilton noted, "Courts have consistently interpreted 'loss'... to mean a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted."  *Lasco Foods, Inc.,* 600 F.Supp.2d at 1052 (quoting *Frees, Inc. v. McMillian,* No. 05-1979, 2007 WL 2264457, *3, 2007 U.S. Dist. LEXIS 57211, *7 (W.D.La. Aug. 6, 2007)); ***see also***

*Continental Group, Inc.*, 622 F.Supp.2d at 1371 (S.D.Fla.2009) ("...all loss must be as a result of "interruption of service." Otherwise, it would appear that the second half of the "loss" definition is surplusage. If loss could be any reasonable cost without any interruption of service, then why would there even be a second half to the definition that limits some costs to an interruption of service."); *Gulfstream Training Academy, Inc.*, 2008 WL 961472 at * 4 (S.D. Fla. 2008) (allegations that former employee accessed employer's laptop computer without authorization and/or in excess of his authorized access were insufficient as a matter of law under CFAA because any "loss" must be related to interruption of service); *Cenvo Corp. v. Celumsolutions Software GMBH & Co. KG*, 504 F. Supp. 2d 574, 580 – 81 (D. Minn. 2007) (employer's action against former employee who allegedly provided a competitor with access to confidential computer access failed to state a claim for violation of CFAA because complaint was devoid of allegations that former employee's access caused an interruption in service); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 477 (S.D. NY 2004) ("if plaintiff had lost revenue because its computer systems were down, that would seem to be the type of lost revenue contemplated by the statute. However, Plaintiffs claim under CFAA failed as a matter of law because they were not claiming to have lost money because their computers were inoperable, but rather because of the way the information was later used by defendants"), *aff'd*, 166 Fed. Appx. 559, 562 (2nd Cir. 2006) (CFAA permits recovery only where connected to an interruption in service); *Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D. NY 2005) (costs unrelated to interruption in service not recoverable).

    Defendant makes no allegations whatsoever that Plaintiff(s)' conduct, unknown as what it may be, based on the vague allegations, in any way caused a

10

"loss" "because of interruption in service" as is required by the plain language of the statute.   In fact, as *Iqbal*, at 1950 specifically allows, the Court can draw upon its common sense to conclude no such alleged conduct caused an interruption in service. To disregard the statutory requirement of "interruption in service" would be to render the language "because of interruption of service" as superfluous, and courts should not interpret one provision of a statute "in a manner that renders other sections of the same statute inconsistent, meaningless, or superfluous." *Cody v. Hillard,* 304 F.3d 767, 776 (8th Cir.2002).

  **C.**  **Defendant has neither adequately plead, nor can he plausibly claim facts in support of the "without authorization or exceeds authorization" element under the CFAA**

  In his complaint, Defendant asserts claims against Plaintiffs under paragraphs (a)(2)(C) and (a)(4) of the CFAA.  Section 1030(a)(2)(C) provides criminal liability for whoever "intentionally accesses a computer ***without authorization or exceeds authorized access***, and thereby...obtains information from any protected computer" 18 U.S.C. § 1030(a)(2)(A),(B), and (C) (emphasis supplied).

  Those provisions create civil liability against whoever does the following:

  (2)  intentionally *accesses* ***a computer without authorization or exceeds authorized access,*** and thereby obtains--
    ...
  (C)  information from any protected computer if the conduct involved an interstate or foreign communication; [or]

  (4)  knowingly and with intent to defraud, ***accesses a protected computer without authorization, or exceeds authorized access***, and by means of such conduct furthers the     intended fraud and obtains anything of value ...; [or]

  In *Shamrock Foods Co. v. Gast*, 535 F.Supp2d. 962 (D.Az.2008), the Court addressed the meaning of the terms "without authorization" and "exceeds authorized

access" in the Computer Fraud and Abuse Act ("CFAA"). The companies involved in the case were in the exact same industry involved in this case (i.e. food service). The Plaintiff alleged that the Defendant began negotiations with a prospective employer while he was still employed as a regional sales manager for it. *Id.* at 963. Approximately two weeks before he resigned, the Defendant e-mailed numerous documents which contained purportedly confidential and proprietary information to his personal e-mail account. *Id.* Thereafter, the Plaintiff performed a forensic analysis of his computer which disclosed the e-mails that were sent. *Id.* The Plaintiff filed suit in Federal Court and based jurisdiction upon a violation of the CFAA. *Id.* The Plaintiff explicitly alleged that the Defendant was acting as an agent of his new employer when he accessed and e-mailed the confidential information.  *Id.* Defendant moved to dismiss arguing that the Defendant was authorized to access the computer and information at issue. *Id.*

The *Shamrock Foods* Court agreed with the Defendant and dismissed the case. The *Shamrock Foods* Court began its analysis by noting the split in authority between the Courts that have addressed this issue.  Indeed, some Courts have applied agency principles to the CFAA and held that an employee accesses a computer "without authorization" whenever the employee, without the knowledge of the employer, acquires an adverse interest or is guilty of a serious breach of loyalty. *Id.* at 964.  In contrast, other Courts have opted for a less expansive view, holding that the phrase "without authorization" generally only reaches conduct by outsiders who do not have permission to access the Plaintiff's computer in the first place. *Id.* at 964 – 65. The *Shamrock Foods* Court sided with those Courts which adopted the latter view. *See, e.g., Salestraq America, LLC v. Zyskowski*, 2009 WL 1652146 at *5 (D.Nev.2009). (dismissing the complaint  in finding no violation of the CFAA where Plaintiff "...alleges Defendants

obtained a license to access the Website but exceeded their authorized access by copying content from the Website and using that content for Defendants' commercial use...There is a crucial difference between misusing information properly accessed and exceeding one's authorized access to obtain restricted information."); *Condux Int'l, Inc. v. Haugum*, 2008 WL 5244818, at *4 – 6 (D.Minn. Dec. 15, 2008); *Black & Decker (US), Inc. v. Smith*, 568 F.Supp.2d 929, 933 – 36 (W.D.Tenn.2008); *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322, 1341 – 43 (N.D.Ga.2007); *Brett Senior & Assocs., P.C. v. Fitzgerald*, 2007 WL 2043377, at *3 – 4 (E.D.Pa. July 13, 2007); L*ockheed Martin Corp. v. Speed*, 2006 WL 2683058, at *4 – 7 (M.D.Fla. Aug. 1, 2006); *International Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F.Supp.2d 479, 498-99 (D.Md.2005).

More recently, Chief Judge Lungstrum of The United States District Court of Kansas reached the same result. *US Bioservices Corp. v. Lugo*, 595 F.Supp.2d 1189 (D.Kan.2009). In *Lugo*, the Plaintiff group of specialty pharmaceutical care providers who serviced the pharmaceutical needs of manufacturers, physicians, patients, and payors, sued former employees who allegedly obtained confidential information while still employed by the Plaintiff and then disclosed the information to their new employer, a competitor of Plaintiffs, who then used the information to interfere with Plaintiffs' contractual and business relationships. *Id. at 1190.* Finding it clear from the complaint that the Defendant employees had access to the computer in which the information was maintained as part of their employment at the time they obtained it, the district court dismissed one of the CFAA claims premised on the ground that they had not acted without or in excess of that authorization.

In reaching his conclusion, Judge Lungstrum noted the statutory language of the

CFAA defining "exceeds authorized access" and the legislative history and intent of the CFAA.  The CFAA defines "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).  In light of 18 U.S.C. § 1030(e)(6), Judge Lungtsrum stated,

> under the clear language of the statute, a violation for exceeding authorized access occurs when the defendant has permission to access the computer in the first place, but then accesses certain information to which he is not entitled.

*US Bioservices Corp.*, 595 F.Supp.2d at 1193.

> Turning to the legislative history of the statute, Judge Lungstrum noted,

> The CFAA was intended as a criminal statute focused on "hackers" who trespass into computers, and the statute deals with unauthorized access in committing computer fraud rather than the mere use of a computer. Moreover, in 1986 Congress amended the CFAA to substitute "exceeds authorized access" for the phrase "having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." The stated intent of that change was to eliminate the reference to the defendant's "purpose", thereby removing a murky ground for liability. As noted by the court in *Shamrock,* this core language, focusing on access instead of purpose, remains unchanged today.

*US Bioservices Corp.*, 595 F.Supp.2d at 1193 (internal citations omitted).

> In recognizing the limited reach of the CFAA, Judge Lungstrum then quoted the reasoning expressed in *Fitzgerald,* 2007 WL 2043377, at *4 & n. 7,

> In the plaintiff's reading, however, the computer is not the locus of the wrongful conduct, but merely the fortuitous place where the information was obtained.  ***Under the plaintiff's view, turning over information to a competitor would be a violation of the CFAA if obtained from a computer but not, for example, from a wastebasket, even though the defendant was permitted to access the information in the computer.***

*US Bioservices Corp.*, 595 F.Supp.2d at 1194 (emphasis supplied).

14

In his complaint, Defendant alleges no facts that establish that Plaintiffs did anything without authorization or permission. In fact, Defendant does not even provide a vague assertion of what Plaintiffs did, who was involved, or what information and/or documents are at issue. (¶4, 5, 6 & 14) This is perhaps because Defendant does not have any such facts to support the claim, and his claim is entirely without merit.

Defendant also alleges that Plaintiffs were at all times relevant, employees of the Law Offices of Jeremiah Johnson and that Plaintiffs "took control of an Apple iPhone, Apple iPad, and one or more computers that were used by the Defendant in the course and scope of his employment and which were located at the business office." (¶3 & 4) These allegations actually undermine any argument that Plaintiff(s) engaged in any conduct "without authorization and/or exceeding her authorized access."  By any reading of the counterclaim, Plaintiffs had access to such documents, whatever they may be, and to view and work on such documents. Additionally, Jeremiah Johnson was not the only partner of the firm. The other partner also provided access and permission to the Plaintiffs not only in the normal course of business but also after learning that Defendant had secretly recorded Plaintiffs.

It is equally clear that Plaintiffs did not "hack" into the computers to gain access to any information or documents.  Moreover, there is no allegation the unidentified documents were not permitted to be accessed by Plaintiffs.  As a result, the complaint is factually devoid of a plausible claim that Plaintiffs were "without authorization or exceeded authorization."

### Count II of Defendant's Counterclaim Fails to
### Establish that Defendant has been Damaged, and
### Therefore Fails to State a Claim for Which Relief Can be Granted

In Count II of his Counterclaim Complaint, Defendant alleges breach of contract against all three Plaintiffs. Specifically, Defendant alleges Plaintiffs, through their then-attorneys, Jason Roth and Patrick Copley, breached a confidentiality agreement the parties and their attorneys entered into on October 20, 2011 during a pre-suit mediation. At the time of the mediation, Roth and Copley were representing all three Plaintiffs. As of the filing of this suit (and the filing of the instant Motion to Dismiss), Roth and Copley are representing only Plaintiff Katie Sellers. The agreement Plaintiffs allegedly breached is attached to Defendant's Counterclaim Complaint as Exhibit 1.

A Johnson County, Kansas Assistant District Attorney had been assigned to investigate Defendant prior to October 20, 2011 (the date of the parties' pre-suit mediation). (Defendant's Counterclaim Complaint, ¶28). Paragraph 28 states specifically that the Assistant District Attorney had been assigned to investigate "the matter." A review of the Counterclaim Complaint makes clear that "the matter" referred to is the "facts and circumstances which occurred on June 2, 2011 . . . at the law offices located at 104 E. Poplar, Olathe, Kansas." This vague description is set forth in paragraph 20 of the Counterclaim Complaint. The "facts and circumstances" relate to the factual allegations alleged in Plaintiffs Complaint against Defendant. Thus, connecting these somewhat non-descript statements in the Counterclaim Complaint, it is shown, based only on the pleadings, that prior to October 20, 2011, Defendant had been the subject of a Johnson County, Kansas District Attorney's investigation for invading Plaintiffs' privacy rights.

It is also shown, based only on the pleadings, that prior to October 20, 2011, Defendant had retained a criminal defense attorney.  This is alleged by Defendant in paragraph 29 of his Counterclaim Complaint.

Defendant alleges Plaintiffs breached the above-referenced confidentiality agreement when Roth and Copley discussed on October 20, 2011 two different things with the Assistant District Attorney who had been investigating Defendant:  (1) issues involved in the mediation; and (2) legal positions taken by the parties at the mediation. (Defendant's Counterclaim Complaint, ¶27).  By allegedly discussing these two things with the Assistant District Attorney who had been investigating Defendant, Defendant alleges two separate categories of damages:  (1) attorney's fees and costs; and (2) the potential that the criminal matter under investigation by the Johnson County, Kansas District Attorney's office would be formally commenced against Defendant. (Defendant's Counterclaim Complaint, ¶31).

Defendant's claim for breach of contract fails to state a claim against Plaintiffs because both categories of damages alleged by Defendant are speculative.

## I.     Standard

A court will dismiss a cause of action for failure to state a claim when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827 (1989).  On motions to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.  *Bell Atlantic Corp.*, 550 U.S. at 555.  Factual allegations must be enough to raise a right to relief above the speculative level.  *Id.*; *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004).  When the allegations

in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.  *Id.* at 558; *citing* 5 Wright & Miller § 1216, at 233–234.

## II.    Breach of Contract

Before discussing the speculative nature of Defendant's alleged damages, it is important to note that if information is learned at a mediation, even if the mediation is confidential, lawyers are not prohibited from investigating the information or matter learned.  An example of this would be a mediation involving a personal injury action connected to an intersection car accident.   If, during the course of the mediation, plaintiff's counsel learns defendant's counsel has spoken with an eyewitness previously not known to plaintiff's counsel, who is expected to provide testimony that the plaintiff was at fault for the accident, plaintiff's counsel is not only *allowed* to track down the eyewitness subsequent to the mediation and learn what the individual observed, but, arguably, it is the lawyer's *duty* to conduct such an investigation.   Paragraph 2 of the Kansas Rules of Professional Conduct Preamble states in relevant part:

> As a representative of clients, a lawyer performs various functions.   As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications.   As an evaluator, a lawyer acts as evaluator by examining a client's legal affairs and reporting about them to the client or to others.

Thus, reading Defendant's allegations in paragraph 27 of the Counterclaim Complaint, the fact that Roth and Copley allegedly discussed "issues" with an individual outside the mediation – specifically, the Assistant District Attorney who had been investigating Defendant for invading Plaintiffs' privacy rights – does not allege a violation of the agreement.  If, for example, it was stated at the mediation in question that in the event a

civil case was filed against Defendant that the facts of how Plaintiffs learned of Defendant's eavesdropping and spying would be presented to law enforcement and criminal charges would be sought under a "computer crime" statute, counsel for Plaintiffs would have been obligated – would have had a duty – to protect their clients and investigate these potential criminal charges.  Under this scenario, a mere discussion of the "issues" (i.e., the potential criminal charges against Plaintiffs, the applicability of any state or federal statute) with the Assistant District Attorney would not have been a violation of the confidentiality agreement.

Under Kansas law, the elements of a cause of action for breach of contract are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach.  *Commercial Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322 (1973).  "As stated by the Kansas Supreme Court, '[i]t is a fundamental principle of law that recovery may not be had where it is not shown with reasonable certainty that damage was suffered and that such damage resulted from the act or omission complained of.'" *In re Glannon*, 245 B.R. 882, 896 (D.Kan. 2000) (*citing Apperson v. Security State Bank*, 215 Kan. 724, 735, 528 P.2d 1211 (1974); *citing* 25 C.J.S. Damages § 2, p. 683; 22 Am.Jur.2d Damages §§ 20, 21, p. 37 – 39).  "[D]amages which are remote, contingent, and speculative in character cannot serve to support a judgment." *Source Direct, Inc. v. Mantell*, 19 Kan.App.2d 399, 409, 870 P.2d 686 (1994) (*citing Apperson,* 215 Kan. at 724).

In the case at bar, Defendant alleges that due to Plaintiffs' breach of the mediation confidentiality agreement, Defendant has suffered "the potential that the

matter under investigation by the Johnson County District Attorney's office would be formally commenced against Defendant. . . ."  (Defendant's Counterclaim Complaint, ¶ 31).  This is clearly speculative.  As of the filing of this Motion to Dismiss, no criminal charges have been filed against Defendant.  Defendant's alleged damages of "attorney's fees and costs" (Defendant's Counterclaim Complaint, ¶ 27) are also speculative.  As explained above, prior to the date of Plaintiffs' alleged contract breach, Defendant was already under investigation by the Johnson County District Attorney's Office.  Also, as explained above, prior to the date of Plaintiffs' alleged breach of contract, Defendant had already hired criminal defense counsel.

A phone call is alleged between the Johnson County Assistant District Attorney investigating Defendant and Defendant's criminal defense counsel on the evening of October 20, 2011, but nothing more is alleged as to attorney involvement in the criminal case.  Regardless, considering the facts that the Johnson County District Attorney's Office was already investigating Defendant and that Defendant had already hired a criminal defense attorney, any allegation that a discussion of "issues" or "legal positions" taken at the pre-suit mediation caused an increase or decrease in the intensity or seriousness with which the Johnson County District Attorney's Office was considering criminal charges against Defendant requires pure speculation and conjecture.  It is impossible to know if Plaintiffs' alleged breach on October 20, 2011 caused an increase in activity from the Johnson County District Attorney's Office, and thus an increase in activity with Defendant's criminal defense counsel; or if Plaintiffs' alleged breach caused a decrease in activity from the Johnson County District Attorney's Office, and thus a decrease in activity (and with it, a decrease in fees) with Defendant's criminal defense counsel.  Pointing to *one* phone call is not enough.  The information discussed between

the Johnson County Assistant District Attorney and Defendant's criminal defense attorney on October 20, 2011 during the alleged phone call may have resolved the need for several phone calls moving forward.  Simply put, the damages are too speculative to be the basis for a breach of contract claim against these Plaintiffs.

WHEREFORE, based on the above and foregoing, Plaintiffs/Counterclaim Defendants respectfully requests that the Counterclaims alleged by Defendant be dismissed, that Plaintiffs be awarded their costs incurred herein and any further relief that this Court deems just and proper.

**HOLMAN SCHIAVONE, LLC**

*s/ Anne Schiavone*
Anne Schiavone, KS# 19669
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
E-mail: aschiavone@hslawllc.com

ATTORNEYS FOR LAUREN SPALSBURY

and

**COPLEY ROTH & WILSON, LLC**

*s/ Jason P. Roth*
Jason P. Roth, KS# 20529
Patrick Copley, KS# 20699
7300 College Blvd., Suite 175
Overland Park, Kansas 66210
Telephone: 913.451.9500
Facsimile: 913.451.9501
E-mail: jason@crwlawyers.com
E-mail: patrick@crwlawyers.com

ATTORNEYS FOR KATIE SELLERS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

A. Scott Waddell
WADDELL LAW FIRM LLC
2029 Wyandotte, Suite 100
Kansas City, Missouri 64108

ATTORNEYS FOR BROOKE BASHAW

and

Richard T. Merker
WALLACE, SAUNDERS, AUSTIN
BROWN and ENOCHS, Chartered
10111 West 87th Street
P.O. Box 12290
Overland Park, Kansas 66282

ATTORNEYS FOR DEFENDANT/COUNTERCLAIM
PLAINTIFF JEREMIAH JOHNSON

_s/ Anne Schiavone_
ATTORNEY FOR PLAINTIFF