IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BROOKE BASHAW and KATIE SELLERS and )
LAUREN SPALSBURY,                    )
                                     )
            Plaintiffs/              )
            Counterclaim Defendants, )
vs.                                  )        Case No: 11-CV-2693 JWL/JPO
                                     )
JEREMIAH JOHNSON,                    )
                                     )
            Defendant/Counterclaimant. )
                                     )

## DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE UNDER SEAL

In reply to the Plaintiffs' Memorandum in Opposition to Defendant's Motion to File Under Seal, Defendant/Counterclaimant can show good cause for filing this case under seal for a number of reasons.  Preliminarily, however, Defendant generally agrees with the Plaintiffs' citation of the law surrounding a request for the case file to be sealed, however, Defendant points out that the Plaintiffs' citation is incomplete.  In fact, Judge Waxse in the case of *MGP Ingredients, Inc. vs. Mars, Incorporated, et al.,* No. 06-2318-JWL-DJW, ruled on a request to file pleadings under seal and stated "In keeping with 'the paramount right of public access,' this Court requires a party moving for permission to file a particular document under seal to demonstrate a <u>public</u> or private harm that is sufficient to justify the sealing of the document."  (Emphasis supplied).  Plaintiffs have articulated in their motion that simply a request to file a particular document under seal is only applicable where it demonstrates a "public" harm rather than the true basis which is a public or private harm.  Obviously the decision of Judge Waxse on March 5, 2007, is subsequent to the case cited by the Plaintiffs and would be controlling.  Therefore, the

Court must address this matter based on whether there is any public or private harm justifying the sealing of the documents.

## PLAINTIFFS OBVIOUS INTENT TO DAMAGE THE DEFENDANT'S REPUTATION AND BUSINESS

This Court need not go past the Plaintiffs, Lauren Spalsbury's and Katie Sellers' Suggestions in Support of their Motion to Dismiss the Defendant's Counterclaim to see their purpose and goal. It is admitted in those documents that counsel for all three Plaintiffs, at the time of the mediation, namely Jason P. Roth and Patrick Copley, intentionally violated the confidentiality agreement on the pre-suit mediation that occurred in the matter. There is some veiled suggestion that they were entitled to do so which is remarkable. A mediation that was dealing with the threatened civil suit against the Defendant was mediated by Donald Vasos. Plaintiffs' counsel admittedly took information that was solely obtained from the discussions at the mediation and contacted the Assistant District Attorney who is reviewing the allegations that the Plaintiffs have made with the criminal authorities. There is no suggestion whatsoever that they are apologetic for doing so and equally, there is no belief by the Defendant that they will not do so in the future. This would include any pleadings that are filed, written discovery and depositions. It is also obvious from the memorandum filed by the Plaintiffs that they intend to attempt to damage the Defendant's business and reputation by suggesting that somehow litigating this case through the local television media, including Channel 4, is an appropriate way to try their case. It is presently unknown by the Defendant how Channel 4 was aware of the filing of this suit within hours, but it certainly suggests that it was probably at the assistance of the Plaintiffs or Plaintiffs' counsel. By providing said information, the Plaintiffs would request that the Court

2

presume that all of the allegations set forth in the Plaintiffs' Complaint are true based upon the presentation of absolutely no evidence.   The Court can further look at the Answer of Plaintiff Brooke Bashaw where in paragraphs 9, 10 and 12, she admits that there was a pre-suit mediation but denies that she was bound by the mediation and that she never agreed not to speak to any law enforcement regarding the facts and/or the criminal conduct perpetrated by the Defendant or to inquire regarding Defendant's legal counsel's "threats" during the mediation regarding her alleged criminal culpability.   No more obvious, blatant and direct suggestion can be made other than the pleadings and conduct of the Plaintiffs and their counsel previously in order to predict, with accuracy, what will occur in the future without a Court Order.

## HARM TO OTHER MEMBERS OF THE PUBLIC

The Defendant represents a number of parties in personal injury and wrongful death cases that have been pending for a substantial period of time.   The further display of this case in the public media certainly could have potentially negative impact on the clients of the Defendant and their cases.   Therefore, the desire of the Plaintiffs to parade this case in the public forum not only suggests that they are really not harmed to the extent as claimed in the pleadings, but would also suggest that they have no reluctance to harm other individuals who are clients of the Defendant.   Many of the cases have been open for years and are near the completion of discovery or trial setting and are far beyond the point where the clients should have to retain other counsel, which is exactly what the Plaintiffs would like.   Such conduct on the part of the Plaintiffs and their counsel certainly would amount to a "private" harm to those innocent parties.

wsabeop0 101214428 v.1

## DEFENDANT'S FIFTH AMENDMENT CONSTITUTIONAL RIGHTS AND ITS IMPACT ON THIS CIVIL SUIT

As the Court is aware, shortly after the alleged incident, the Plaintiffs, with their counsel, reported the matter to the Olathe Police Department. As a result, even though the alleged incident occurred on June 2, 2011, the Assistant District Attorney for Johnson County still has not filed any criminal charges against the Defendant. We do know that on the same day of the mediation, the Plaintiffs' counsel contacted the same Assistant District Attorney and discussed what occurred in the mediation. Since there is a potential of a criminal charge against the Defendant, it is most probable that any pleadings, discovery and depositions that may be given in this case will, shortly thereafter, be delivered to the District Attorney's Office of Johnson County, Kansas, unless an order is entered to prevent it. By doing so, a criminal prosecutor would have access to testimony of the Defendant in the civil case which he would not have access to in a criminal setting. Presumably, that is exactly what the Plaintiffs are wishing to do in this matter. By releasing the information publically, it may cause the Defendant to refuse to testify in this civil suit.

## PLAINTIFFS' CAUSE OF ACTION

It is remarkable that the Plaintiffs' attorneys are opposing the sealing of the record in this case. A review of the Complaint shows that each of the Plaintiff allegedly had their privacy invaded and that by the alleged conduct of the Defendant, each of them suffered mental distress and injury to their ordinary feelings and intelligence, along with an intrusion on their solitude, all of which cause them to sustain damages, including but not limited to mental suffering, shame, humiliation and emotional distress. By making such claims, the Plaintiffs obviously will be placing their prior psychological

and/or psychiatric conditions in issue.   If, in fact, the Plaintiffs have suffered the damages that they have claimed, you would assume that they would not want to have their entire medical history and personal prior relationships provided to the public for their review.   It simply is not at all consistent that the Plaintiffs have suffered the damages that they have claimed, but they want the television and newspaper media, and anyone else, to know all about it.

## THE COURT HAS FULL DISCRETION IN RULING ON THIS TOPIC

Federal Courts recognize a common law right of access to judicial records, although that right is not absolute.  Whether to allow access at the District Court level is left to the discretion of the District Court which has supervisory control over its own records and files.  In exercising that discretion, the District Court must consider the relevant facts and circumstances of the case and balance the public's right of access, which is presumed paramount, with the parties' interest in sealing the record.   The public has an interest "in understanding disputes that are presented to the public forum for resolution" and "in ensuring that the Courts are fairly run and Judges are honest." The Courts have denied access in cases in which the Court files have been sought for improper purposes, such as promoting public scandal or harming a business litigant's competitive standing.  Id.  Citing *Nixon vs. Warner Communications, Inc.,* 435 U.S. 589, 597-99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) among other cases.  Unless a party establishes a "public or private harm sufficient to overcome the public's right of access to judicial records," the Court declines to seal any part of the record in the case.  Id. "The fact that all litigants favor sealing the record is of interest, but is not determinative." Id.

Fed.R.Civ.P. 26(c) provides that the Court, upon a showing of good cause, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."   The party seeking a protective order has the burden to show good cause for it.  *Sentry Ins. vs. Shivers*, 164 F.R.D.255, 256 (D.Kan. 1996).   To establish good cause, that party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Gulf Oil Co. vs. Bernard*, 452 U.S. 89, 102 n.16 (1981).  *P.S. vs. Farm, Inc.,* No. 07-2210-JWL, 2009 WL 483236, at *3 (D.Kan. Feb. 24, 2009); see also *Aikens vs. Deluxe Fin. Svs., Inc.,* 217 F.R.D. at 534 ("A party  may obtain a protective order only if it demonstrates the basis for the protective order falls within one of the categories enumerated in Rule 26(c)).  In other words, the protective order must be necessary to protect the party from annoyance, embarrassment, oppression, or undue burden or expense.

## PLAINTIFFS HAVE DEMONSTRATED THEIR INTENT TO USE THE JUDICIAL PROCESS AS A VEHICLE TO EMBARRASS AND HARASS DEFENDANT/COUNTERCLAIMANT

Plaintiffs have repeatedly indicated that they intend to use this case to embarrass Defendant/Counterclaimant and destroy his business prospects and reputation.  As stated in the Plaintiffs' Motion to Dismiss and Memorandum in Support, Plaintiffs' counsel has contacted the Johnson County District Attorney's Office in an effort to persuade them to charge the Defendant/Counterclaimant criminally.  In fact, subject to discovery, it is believed that after the meeting with the Plaintiffs, Plaintiffs' attorneys themselves accompanied Plaintiffs to the Olathe Police Department where they gave statements to the police.

wsabeop0 101214428 v.1

This conduct continued when Plaintiffs' counsel breached the confidentiality agreement that they had signed only a few hours earlier by contacting the Johnson County District Attorney's Office to discuss what had occurred in private and confidentially in the mediation. Obviously this was an attempt on the part of the Plaintiffs then counsel to persuade the District Attorney to file criminal charges.

The Court need only look to the Plaintiffs' conduct regarding service in this matter to see that the Plaintiffs fully intend to pursue this case in a manner which causes Defendant/Counterclaimant as much embarrassment and lost business as possible. Plaintiffs initially filed the case just before the Christmas holiday, which resulted in the news media covering the story on several newscasts. Defendant/Counterclaimant believes that the Plaintiffs or their counsel may have sent a copy of the Complaint to the press given the timing of the news story. Plaintiffs did not request a Summons when the case was filed; however, they waited until just before the New Year's holiday to request and serve the Summons presumably in an attempt to affect the Defendant during the holidays. While attempting to make excuses for their violation of the confidentiality agreement, it is obvious that Plaintiffs will use every method possible, including potential ethical violations to pursue the claim and to damage the Defendant.

Sealing the file will protect what is left of Defendant/Counterclaimant's reputation and business prospects. Many of his clients find him via the internet or referrals from other clients or attorneys. Plaintiffs' pleadings make it clear that they intend to destroy Defendant/Counterclaimant's ability to retain new clients as much as possible when they state, "The general public has a right to know the type of conduct current members of our bar(s) engage in before making the important decision to hire a professional." The Courts never intended for litigation to be a method for extracting extra judicial

revenge on disputing parties, and the Court should not allow Plaintiffs to use this case as a tool of harassment and embarrassment.

Further, sealing the file in this case will also protect the non-parties from the disclosure of sensitive information.  For strategic reasons, Defendant/Counterclaimant cannot reveal all instances of private and embarrassing facts of non-parties that may be disclosed during the course of this litigation, but such evidence will be forthcoming in discovery.  It is suggested that the Plaintiffs would want any such information kept private in order to protect themselves and the obvious embarrassment that will ensue thereafter.

It is difficult to believe that the Plaintiffs would generally want the public to know all of the private information that will come forward in this litigation.  It is disingenuous to suggest that each of them had their privacy invaded and that each of the Plaintiffs suffered damages, including but not limited to, mental suffering, shame, humiliation and loss of income, along with emotional distress, but that they want to parade those facts in the public forum and have that information generally known to the public and the press. It is certainly inconsistent to suggest that they have suffered such magnanimous damages, but that somehow having the information made known to the public is a benefit to them.

In the case of *Almosrati and Moate, Plaintiffs, vs. Scotch Investment Corporation*, 11CV1301-JWL-JPO, a protective order was entered in that matter to protect documents that would be produced in the case which contain confidential employment, personal, financial and/or medical information regarding the Plaintiffs and/or other employees and/or former employees of the Defendant.  In the Court's Order, he found that some of the deposition testimony that has or will be elicited in the case concerns

wsabeop0 101214428 v.1

issues which would cause embarrassment or otherwise draw unwanted attention to persons who are not parties to the case if it was publically disclosed.  The Honorable James P. O'Hara approved the protective order in question on January 6, 2012, which order was expansive and dealt with all motions, exhibits and other documents used in the case.  The Court even further ordered that the provisions of the order regarding the confidentiality would continue and be binding even after the litigation was terminated.  In entering the order, the Court found that any violation of the provision of the protective order may be punishable as contempt of Court.

## CONCLUSION

Defendant has clearly shown to the Court that there has been harm and will be public and private harm, even to the Plaintiffs, if an order to seal is not entered and followed.  Prior conduct of Messrs. Copley and Roth, and now their clients, clearly show what will occur without the Court's intervention.  All of the purposes and goals of sealing pleadings, discovery and depositions, along with exhibits, have been clearly shown by the Defendant and should be adopted by the Court.

WALLACE, SAUNDERS, AUSTIN,
BROWN AND ENOCHS, CHARTERED

By _____ /s/ Richard T. Merker _____
     Richard T. Merker     KS# 07405
     10111 West 87th Street
     Overland Park, KS 66212
     rmerker@wallacesaunders.com
     913-888-1000    Fax - 913-888-1065

ATTORNEYS FOR DEFENDANT
JEREMIAH JOHNSON

wsabeop0 101214428 v.1

I, the undersigned, hereby certifies that a true and
correct copy of the above and foregoing was electronically
filed under seal with the Clerk of the Court by using the CM/ECF
system which will send notice of electronic filing to the following,
on this 10th day of February, 2012, to:

Mr. A. Scott Waddell
WADDELL LAW FIRM LLC
2029 Wyandotte, Suite 100
Kansas City, MO 64108
scott@aswlawfirm.com
(816) 221-2555  Fax:  (816) 221-2508

ATTORNEYS FOR PLAINTIFF
BROOKE BASHAW

Mr. Jason P. Roth
Mr. Patrick Copley
COPLEY ROTH & WILSON, LLC
7300 College Boulevard, Suite 175
Overland Park, KS 66210
jason@crwlawyers.com
patrick@crwlawyers.com
(913) 451-9500  Fax:  (913) 451-9501

ATTORNEYS FOR PLAINTIFF
KATIE SELLERS

Ms. Anne Schiavone
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, MO 64112
aschiavone@hslawllc.com
(816) 283-8738  Fax:  (816) 283-8739

ATTORNEYS FOR PLAINTIFF
LAUREN SPALSBURY

_____/s/ Richard T. Merker_____
For the Firm

wsabeop0 101214428 v.1