IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BROOKE BASHAW and KATIE SELLERS and LAUREN SPALSBURY, | ) ) ) | |
| Plaintiffs/ Counterclaim Defendants, | ) ) ) | |
| vs. | ) ) | Case No: 11-CV-2693 JWL/JPO |
| JEREMIAH JOHNSON, | ) ) ) | |
| Defendant/Counterclaimant. | ) ) | |

## DEFENDANT'S/COUNTERCLAIMANT'S RESPONSE TO PLAINTIFFS LAUREN SPALSBURY'S AND KATIE SELLERS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM PURSUANT TO FRCP 12(b)(6) FOR FAILURE TO STATE A CLAIM

**COMES NOW** Defendant/Counterclaimant and for his Response to Plaintiff's Lauren Spalsbury's and Katie Sellers' Motion to Dismiss Defendant's Counterclaim Pursuant to FRCP 12(b)(6) for Failure to State a Claim, states as follows:

Defendant's counterclaims clearly state the facts necessary to defeat a motion to dismiss.  Any "speculation" as claimed by Plaintiffs will be resolved during discovery, since Plaintiffs themselves can shed light on their actions and the actions of their counsel as they relate to Defendants' counterclaims.

Defendant objects to the information contained in Plaintiff's "introduction" section as this is not only factually incorrect, but also inappropriate for a motion to dismiss as it is not supported by any evidence.

Much of Plaintiff's Motion to Dismiss seems to be a summary judgment motion in disguise which is inappropriate before discovery has been completed.   Defendant believes that Plaintiff's Motion to Dismiss should be denied on this basis alone.

## I.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). "Plausibility" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Id. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The complaint 'does not need detailed factual allegations'" to surmount a motion to dismiss for failure to state a claim. *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (interior quotations omitted). However, "the complaint must give the court reason to believe that [the plaintiff] has a reasonable likelihood of mustering factual support of [the plaintiff's] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## II. PLAINTIFF HAS PROPERLY ALLEGED THE ELEMENTS OF A VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

Plaintiffs' Motion to Dismiss should be denied because Defendant has adequately pled the elements of a Computer Fraud and Abuse Act claim.

Defendant's counterclaim clearly states that Plaintiffs intentionally accessed computers Plaintiff's either had no permission to access and/or exceeded any prior authorizations they might have had. The loss of data is also alleged as is damage in excess of $75,000. Consequently, all of the elements for a CFAA violation are stated in Defendant's counterclaim.

### A. Defendant's Counterclaim properly identifies the elements of a number of CFAA claims

Plaintiff's Motion to Dismiss attempts to frame Defendant's Counterclaim as only pertaining to 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(4). Defendant's counterclaim is not limited to these sections and also makes allegations of violations of 18 U.S.C. § 1030(a)(5)(A), 18 U.S.C. § 1030(a)(5)(B), and 18 U.S.C. § 1030(a)(5)(C).

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") prohibits illicit and fraudulent computer-related activities and allows for civil recovery under the circumstances provided in § 1030(g). That subsection specifically provides:

> "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

18 U.S.C. § 1030(g).

Defendant's counterclaim alleges that a number of the CFAA's provisions were violated by Plaintiffs. Among these are:

§ 1030(a)(2)(C) - "Whoever - - intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains - - . . . information from any protected computer . . ."

§ 1030(a)(4) - "Whoever - - knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period"

§ 1030(a)(5)(A) - "Whoever - - knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct intentionally causes damage without authorization to a protected computer"

§ 1030(a)(5)(B) - "Whoever - - intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage"

§ 1030(a)(5)(C) - "Whoever - - intentionally accesses a protected computer without authorization and as a result of such conduct, causes damage and loss"

The statute defines the term "exceeds authorized access" as "access[ing] a computer with authorization and [using] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

The CFAA covers a wide variety of unauthorized uses of computers and electronic information. For instance, simply viewing material on a computer screen constitutes 'obtaining' information under the CFAA. *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 648 (E.D. Pa. 2007) (citing legislative history for CFAA).

Plaintiffs' Motion to Dismiss alleges that Defendant "does not state what was allegedly done, on what type of device the alleged conduct occurred, or who allegedly

engaged in the conduct." [1] This is incorrect.

Defendant's counterclaim alleges in paragraph 5 that Plaintiffs, without any authorization, violated the CFAA, stating: "one or more of the Plaintiffs without authority, used copied, modified and irreversibly changed all or portions of the material and data on said iPhone or iPad, and computers, all without the knowledge or consent of the Defendant or any other authorized person.[2]

Defendant's counterclaim further alleges in paragraph 6 that plaintiffs exceeded authorization, stating: "one or more of the Plaintiffs while exceeding authority, used copied, modified and irreversibly changed all or portions of the material and data on said iPhone or iPad, and computers, all without the knowledge or consent of the Defendant or any other authorized person."[3]

Paragraphs 13 and 14 of Defendant's counterclaim also allege that the Plaintiff what was allegedly done (intentionally accessed devices without or in excess of their authorization), state the type of devices the conduct occurred on (iPhone, iPad, and computers) and who engaged in the conduct (one or more Plaintiffs).   Defendant expects to fill in the details of these allegations during discovery.

These paragraphs are sufficient to allege the CFAA violations listed above because they allege that the Plaintiffs accessed computers protected by the CFAA either without authorization or by exceeding their authorization.

---

[1] Page 5 of Plaintiff's Motion to Dismiss
[2] P 5 Counterclaim
[3] P 6 Counterclaim

**B.   Defendant's Counterclaim properly alleges damages and loss in excess of $5,000.00**

Defendant's counterclaim also properly alleges the damages and loss portions pertaining to CFAA violations.   Paragraph 15 of Defendant's counterclaim specifically states that Defendant's damages exceed $5,000.00 and that such damages are a direct result of Plaintiffs' CFAA violations.

The CFAA provides a civil action to "any person who suffers damage or loss" as a result of conduct prohibited by the CFAA. 18 U.S.C. § 1030(g).

"Damage" in the CFAA refers to "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

First, "damage" occurs when an act impairs the "integrity" of data, a program, a system, or information. This part of the definition would apply, for example, where an act causes data or information to be deleted or changed, such as where an intruder accesses a computer system and deletes log files or changes entries in a bank database.

Deleting content from a computer falls within the definition of "damage," i.e., according to § 1030(e)(8), "any impairment to the integrity or availability of data, a program, system or information."   See *Lasco Foods, Inc. v. HSSMC*, 600 F.Supp.2d 1045, 1052 (E.D.Mo. 2009).

Even if information was not deleted, "damages" for CFAA purposes may still be found if the integrity of data is impaired.   In *Shurgard Storage Centers*, a self-storage company hired away a key employee of its main competitor. Before the employee left to take his new job, he emailed copies of computer files containing trade secrets to his new employer.   In support of a motion for summary judgment as to the section

1030(a)(5) count, the defendant argued that the plaintiff's computer system had suffered no "damage" as a consequence of a mere copying of files by the disloyal employee. The court, however, found the term "integrity" contextually ambiguous and held that the employee did in fact impair the integrity of the data on the system—even though no data was "physically changed or erased" in the process—when he accessed a computer system without authorization to collect trade secrets. See *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1126-27 (W.D. Wash. 2000). Courts have made similar rulings in *HUB Group, Inc. v. Clancy*, 2006 WL 208684 (E.D. Pa. 2006) (downloading employer's customer database to a thumb drive for use at a future employer created sufficient damage to state claim under the CFAA), and *I.M.S. Inquiry Management Systems v. Berkshire Information Systems,* 307 F. Supp. 2d 521, 525-26 (S.D.N.Y. 2004) (allegation that the integrity of copyrighted data system was impaired by defendant's copying was sufficient to plead cause of action under CFAA).

Response costs that count towards establishing the $5,000.00 jurisdictional threshold include any resources expended in hiring a computer consultant to determine if and how a computer has been compromised and any resources expended in fixing any problems caused by the unauthorized access. See *EF Cultural Travel BV v. Explorica, Inc*, 274 F3d 577, 584 (1st Cir 2001) ($5,000 jurisdictional threshold met where plaintiff paid $20,944.92 to consultant to assess whether computer had been compromised); see also *Pacific Aerospace & Electronic, Inc v. Taylor*, 295 F Supp 2d 1188, 1197 (ED Wash 2003) (commenting on the ease with which a plaintiff may satisfy the $5,000.00 jurisdictional threshold). However, response costs may not be limited to situations where third-party computer consultants are retained, and the costs associated

with having a plaintiff's own employees assess and respond to the unauthorized access may count towards establishing the $5,000.00 jurisdictional threshold. A decision in a criminal case under the CFAA has held that remedial measures taken by a victim's own employees can qualify as economic damages. See *United States v. Middleton*, 231 F3d 1207, 1214 (9th Cir 2000) (stating "[t]here is no reason to believe that Congress intended the element of 'damage' to depend on a victim's choice whether to use hourly employees, outside contractors, or salaried employees to repair the same level of harm to a protected computer").

Plaintiffs Motion to Dismiss focuses on their claim that Defendant cannot meet the CFAA's damages requirement because Defendant cannot prove that data was erased, citing authority from a number of outside jurisdictions. This claim is factually incorrect and ignores District of Kansas precedent regarding the CFAA. Additionally, this claim seems to be more appropriate for a summary judgment motion than a motion to dismiss.

Defendant's counterclaim alleges data was erased by Plaintiffs in paragraphs 5, 6, and 14 and that, because the data was erased, Defendant suffered damages in excess of $5,000.00. Defendant is not required to prove data was erased to defeat a motion to dismiss, nor is proving damage is a requirement for every claim brought under the CFAA. See *Paradigm Alliance Inc. v. Celeritas Technologies LLC*, 659 F. Supp. 2d 1167, 1192 (D. Kan. 2009).

Plaintiffs' Motion to Dismiss also claims that Defendant's counterclaim does not allege an interruption in service. This is incorrect because the deletion of data is a form of an interruption in service.

"Loss" means "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

This definition includes, for example, the prorated salary of a system administrator who restores a backup of deleted data, the prorated hourly wage of an employee who checks a database to make sure that no information in it has been modified, the expense of re-creating lost work, the cost of reinstalling system software, and the cost of installing security measures to re-secure the computer to avoid further damage from the offender. See *United States v. Middleton*, 231 F.3d 1207, 1213-14 (9th Cir. 2000) (interpreting § 1030(a)(5) before addition of the definition of damage); see also *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584 n.17 (1st Cir. 2001) (awarding costs of assessing damage); *United States v. Sablan*, 92 F.3d 865, 869-70 (9th Cir. 1996) (in calculating "loss" for purposes of earlier version of sentencing guidelines, court properly included standard hourly rate for employees' time, computer time, and administrative overhead); see also *I.M.S. Inquiry Management Systems v. Berkshire Information Systems*, 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004) (awarding costs related to "damage assessment and remedial measures").

Damages such as the deletion or alteration of data inherently involve an interruption in service loss as defined by the CFAA because the data is no longer available, or at least not readily accessible. As stated above, Defendant's counterclaim clearly and repeatedly alleges that Plaintiffs deleted or altered data. Defendant's

counterclaim alleges that the damages from Plaintiffs' actions caused damages in excess of $5,000.00.

The damage and loss elements of a CFAA claim includes a wide variety of damages which Defendant has clearly alleged.   Defendant's counterclaim properly alleges damages and loss due to Plaintiffs' CFAA violations of more than $5,000.00, and requests relief for damages in excess of $75,000.00.[4]   Defendant's counterclaim also lists damage in the form of the modification or deletion of data[5] as well as other unspecified damages.[6]   Consequently, Plaintiff's Motion to Dismiss should be denied.

## III. PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S OTHER COUNTERCLAIMS SHOULD BE DENIED

Plaintiffs' Motion to Dismiss the remainder of Defendant's counterclaim should also be denied because Defendant has sufficiently pled the elements of a number of causes of action related to Plaintiffs' actions.   Defendant believes that the evidence supporting the elements of these causes of action will be obtained during the discovery has not commenced.

Plaintiff's motion to dismiss focuses on a breach of contract claim and ignores other potential claims arising from Plaintiffs' conduct, including but not limited to negligent and intentional interference with potential business relations.   Nevertheless, Defendant's counterclaim adequately states the elements necessary for a breach of contract claim.

---

[4] P18 and following prayer for relief.
[5] P 5 and P6 of counterclaim
[6] P18 counterclaim

A.     **Plaintiffs have admitted violating the confidentiality agreement as alleged in Defendant's counterclaim**

Plaintiffs have tacitly admitted the breach of the mediation agreement in their Motion to Dismiss. Plaintiffs do not claim that the parties did not enter into a contract when they agreed to mediate and signed the mediation agreement. Nor do Plaintiffs dispute that they breached the contract and mediation agreement. Instead, Plaintiffs' brief focuses on reasons the mediation agreement allegedly should not apply to them.

B.     **The enforcement of confidentiality agreements is a key to a successful alternative dispute resolution program**

Defendant had a right to expect confidentiality in the mediation. The parties signed a confidentiality clause, in addition to the inherent confidentiality enforced by the Federal Rules[7] of and Kansas Rules of Civil Procedure.[8]

"The purpose of the confidentiality rule is to encourage the parties to be candid with the mediator by making them comfortable that their positions, willingness to settle, weaknesses of their case, etc. will not prematurely influence the trial judge. Both the United States Congress and the Court of Appeals for the Tenth Circuit, recognize that the guarantee of confidentiality is essential to the proper functioning of a settlement program. See Alternative Dispute Resolution Act, 28 U.S.C. § 652(d) (each district court shall, by local rule, provide for the confidentiality of the mediation process and prohibit disclosure of confidential mediation communications); *Clark v. Stapleton Corp.*, 957 F.2d 745, 746 (10th Cir. 1992) (for settlement program to be successful,

---

[7] Pursuant to the Federal Rules of Evidence, "conduct or statements made in compromise negotiations" are inadmissible as evidence to prove "liability for, invalidity of, or amount of a claim . . . or to impeach through a prior inconsistent statement or contradiction[.]" Fed. R. Evid. 408(a).

[8] See K.S.A. 5-501

participants must trust that matters discussed at a settlement conference will not be revealed)." *New Mexico ex rel. State Engineer v. Aamodt*, 582 F.Supp.2d 1313, 1320 (D.N.M. 2007); cited by *Hand v. Walnut Sailing Club* Case No. 10-1296-SAC D. Kan. (2010)

The importance of the confidentiality rule was recently discussed in *Hand v. Walnut Sailing Club* Case No. 10-1296-SAC D. Kan. (2010) where the Court stated:

> "...it is beyond doubt that maintaining the confidentiality of mediation communications is a sine qua non for preserving the integrity of court-sponsored mediation sessions. ... "the success of mediation depends largely on the willingness of the parties to freely disclose their intentions, desires, and the strengths and weaknesses of their case; and upon the ability of the mediator to maintain a neutral position while carefully preserving the confidences that have been revealed...." *In re County of Los Angeles*, 223 F.3d 990, 993 (9th Cir. 2000) (quoting *Poly Software Int'l, Inc. v. Su*, 880 F.Supp. 1487, 1494 (D.Utah 1995)). Indeed, "[t]he assurance of confidentiality is essential to the integrity and success of the [c]ourt's mediation program, in that confidentiality encourages candor between the parties and on the part of the mediator, and confidentiality serves to protect the mediation program from being used as a discovery tool for creative attorneys." *In re Anonymous*, 283 F.3d 627, 636 (4th Cir. 2002). As a result, "[c]ourts routinely have recognized the substantial interest of preserving confidentiality in mediation proceedings as justifying restrictions on the use of information obtained during the mediation ." *In re Anonymous*, 283 F.3d at 634 (citations omitted).

*Jones v. Metropolitan Life* Ins. *Co.*, 2010 WL 4055928, 10 (N.D. Cal. 2010); cited by *Hand v. Walnut Sailing Club* Case No. 10-1296-SAC D. Kan. (2010).

## C. Plaintiffs' breach of the confidentiality was not authorized

Plaintiffs' contention, that their counsel was some how required to breach the confidentiality agreement Plaintiffs and their counsel had signed in order to represent Plaintiffs' interests. The logic behind this argument seems to suggest that a mediation

confidentially agreement, or any agreement made by parties in a dispute can be breached if an attorney feels it is in his or her best interests to do so.

Additionally, Plaintiffs' argument contradicts Kansas' Dispute Resolution Act which is clear about the confidentiality provisions of mediations in Kansas, stating:

> All verbal or written information transmitted between any party to a dispute and a neutral person conducting a proceeding under the dispute resolution act or the staff of an approved program shall be confidential communications. No admission, representation or statement made in the proceeding shall be admissible as evidence or subject to discovery. A neutral person conducting a proceeding under the dispute resolution act shall not be subject to process requiring the disclosure of any matter discussed during the proceedings unless all the parties consent to a waiver. Any party and the neutral person conducting the proceeding, participating in the proceeding has a privilege in any action to refuse to disclose, and to prevent a witness from disclosing, any communication made in the course of the proceeding. The privilege may be claimed by the party or the neutral person or anyone the party or the neutral person authorized to claim the privilege.

K.S.A 5-512(a)

The Act also lists a number of exceptions to confidentiality, none of which Plaintiffs allege apply to their actions.    Plaintiffs argument that they were somehow authorized to violate the confidentiality of the mediation fails.

### C.   Defendant's counterclaim properly alleges damages caused by Defendant's breach of confidentiality.

Plaintiffs focus much of their brief on Defendant's damages caused by their breach of the mediation agreement.  Their arguments seem to focus on what they consider the speculative nature of damages claimed by Defendant.

Defendant's counterclaim is not speculative in any manner and clearly lists damages, using the language "including but not limited to."[9]   This language clearly indicates that damages are not simply limited to a phone call as alleged by Plaintiffs.

Plaintiffs' contention that the damages cannot be ascertained is a position they may wish to prove to a jury once discovery has been completed, but is not the proper grounds for a motion to dismiss.

Under Federal Rules of Civil Procedure 12(b)(6) the Court will dismiss a cause of action for a failure to state a claim only when it appears beyond a doubt that the Plaintiff can prove no set of facts that would entitle legal relief or when an issue of law is dispositive.  *Ford vs. West*, 222 F.3d 767, 771 (10th Cir. 2000); *Robinson vs. Kansas*, 117 F.Supp.2d 1124, 1129 (D.Kan. 2000).  In the end, the issue is not whether Plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. See *Robinson*, 117 F.Supp.2d at 1129.   Defendant has exceeded this burden in his pleadings.

**THE COURT HAS AUTHORITY TO ALLOW THE DEFENDANT TO AMEND HIS COUNTERCLAIM.**

In the unlikely event that the Court believes that the Counterclaim of the Defendant does not set forth with sufficient specificity the nature of his claims, the Court is cloaked with authority to permit the Defendant to amend his Counterclaim to further clarify those claims.  Rather than to, in essence, decide this matter on a Motion to Dismiss without the benefit of any discovery or evidence and to simply assume that the Plaintiffs do not understand the Defendant's Counterclaim, the Court is authorized to

---

[9] P31 of Defendant's counterclaim

permit the Defendant to amend his Counterclaim to set forth more fully in detail the allegations.  It must be pointed out to the Court, obviously, that there has been no discovery conducted in this case, and even though certain issues in regard to Count II of the Counterclaim are essentially unrefuted by the Plaintiffs, the attempt on the part of the Plaintiffs to dovetail this matter into a summary judgment is inappropriate. Therefore, if the Court is of the belief that more specific allegations need to be made, the Defendant would request that the Court to permit such amendment.

**WHEREFORE**, Defendant requests the Court to deny the Motion to Dismiss of Plaintiffs Lauren Spalsbury and Katie Sellers.

WALLACE, SAUNDERS, AUSTIN,
BROWN AND ENOCHS, CHARTERED

By _____ /s/ Richard T. Merker _____
       Richard T. Merker      KS# 07405
       10111 West 87th Street
       Overland Park, KS 66212
       rmerker@wallacesaunders.com
       913-888-1000    Fax - 913-888-1065

ATTORNEYS FOR DEFENDANT
JEREMIAH JOHNSON

I, the undersigned, hereby certifies that a true and
correct copy of the above and foregoing was electronically
filed under seal with the Clerk of the Court by using the CM/ECF
system which will send notice of electronic filing to the following,
on this 7th day of March, 2012, to:

Mr. A. Scott Waddell
WADDELL LAW FIRM LLC
2029 Wyandotte, Suite 100
Kansas City, MO 64108
scott@aswlawfirm.com
(816) 221-2555  Fax:  (816) 221-2508

ATTORNEYS FOR PLAINTIFF
BROOKE BASHAW

Mr. Jason P. Roth
Mr. Patrick Copley
COPLEY ROTH & WILSON, LLC
7300 College Boulevard, Suite 175
Overland Park, KS 66210
jason@crwlawyers.com
patrick@crwlawyers.com
(913) 451-9500  Fax:  (913) 451-9501

ATTORNEYS FOR PLAINTIFF
KATIE SELLERS

Ms. Anne Schiavone
HOLMAN SCHIAVONE, LLC
4600 Madison Avenue, Suite 810
Kansas City, MO 64112
aschiavone@hslawllc.com
(816) 283-8738  Fax:  (816) 283-8739

ATTORNEYS FOR PLAINTIFF
LAUREN SPALSBURY

_____/s/ Richard T. Merker_____
For the Firm

wsabeop0 101218882 v.1                    16